Commonwealth *v*. Whyatt, Appellant.

Submitted December 6, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Leonard Sosnov, Andrea Commaker Levin, Thomas Branca,* and *John W. Packel,* Assistant Defenders, and *Benjamin Lerner,* Defender, for appellant.

*Harry M. Spaeth, Mark Sendrow,* and *Steven H. Gold-blatt,* Assistant District Attorneys, *Abraham J. Gafni,* Deputy District Attorney, and *F. Emmett Fitzpatrick,* District Attorney, for Commonwealth, appellee.

OPINION BY PRICE, J., June 24, 1975:

Appellant was convicted by a jury of solicitation to commit sodomy,[1] forcible rape,[2] burglary[3] and aggravated robbery.[4] The facts of this case show that on the evening of March 14, 1973, Alicia Ottinger, the victim, returned from work to her residence at 306 Bainbridge Street in Philadelphia. Once at home, Mrs. Ottinger went to bed dressed in her nightgown and underwear. Shortly thereafter, she heard a knock on the door and asked who was there. When she refused to open the door, the lock was broken, the door was broken down and splintered, and three males entered her apartment. One of these three men was the appellant, who was carrying a gun. The men announced a holdup, and Mrs. Ottinger was ordered to lie on a bed and told to keep her eyes closed. Upon complying with these demands, her garments were removed, and she was raped by someone whom she recognized as "Artie" from her neighborhood. After raping her, Artie forced her to commit sodomy upon his person. At the time of these incidents, the 24-year-old victim was three months pregnant.

The victim was then raped by the appellant, who also inserted a screwdriver and another foreign object into her vagina. Although told to keep her eyes closed, Mrs. Ottinger did make an effort to observe these men.

---

1. Act of Dec. 6, 1972, P.L. 1482, No. 334, §1 (18 Pa.C.S. §3123).

2. Act of Dec. 6, 1972, P.L. 1482, No. 334, §1 (18 Pa.C.S. §3121).

3. Act of Dec. 6, 1972, P.L. 1482, No. 334, §1 (18 Pa.C.S. §3502).

4. Act of Dec. 6, 1972, P.L. 1482, No. 334, §1 (18 Pa.C.S. §3701).

After threatening to harm the victim's husband when he came home, the men bound Mrs. Ottinger and fled, taking with them certain objects which they obtained during the ransacking of the apartment. These items included two leather coats, a clock radio, a clock, a lamp and some money.

Police initially arrested the assailant known to the victim as "Artie". Artie confessed to the crime and implicated the appellant, James Whyatt.[5] At trial, Artie testified against the appellant and corroborated the experiences of the victim, who also positively identified the appellant during the trial. Artie's statement, taken March 21, 1973, was admitted into evidence and went out with the jury.

Appellant's defense was that of alibi. He called Hortense McAlister who testified that appellant was with her family and herself before, during and after the time of the rape. However, no other family members were called to substantiate her testimony. The jury did not credit appellant's evidence, and found him guilty on all charges.

Appellant filed motions for a new trial and in arrest of judgment and a petition supplementing the motions. The court en banc denied the motions on April 30, 1974. On May 30, 1974, appellant was sentenced to consecutive terms of imprisonment of from 2½ to 5 years for solicitation to commit sodomy, 5 to 10 years for burglary, and 10 to 20 years each for aggravated robbery and forcible rape. Appeal was taken to this court. We affirm.

Appellant argues that the trial court committed reversible error when it failed to charge the jury that, as a matter of law, Artie Simpson was an accomplice and, as such, his testimony was from a corrupt source and should only be accepted with caution. The judge charged

---

5. The appellant was referred to as "Jimmy" in Artie's confession.

the jury members that they must first determine if Artie Simpson was an accomplice and if they did so find, then they should view his testimony ". . . with disfavor because it comes from a corrupt and polluted source; . . . [and] you should examine [his] testimony closely and accept it only with caution and care." (NT 36)

The appellant correctly states the law of the Commonwealth to be that where a witness is clearly an accomplice in the crime charged, the court should charge the jury as to this fact. *Commonwealth v. Staudenmayer,* 230 Pa. Superior Ct. 521, 326 A.2d 421 (1974). Although in the instant case the trial judge left the question of whether Simpson was an accomplice to the jury, we see no error which deprived the appellant of the fundamentals of a fair trial. *Commonwealth v. Ravenell,* 448 Pa. 162, 292 A.2d 365 (1972). When we examine the judge's entire charge on this point, as we must, *Commonwealth v. Franklin,* 438 Pa. 411, 265 A.2d 361 (1970); *Commonwealth v. Reston,* 224 Pa. Superior Ct. 80, 302 A.2d 428 (1973), we note that all aspects of testimony by an accomplice were very adequately covered.

In any event, although appellant did submit a correct point for charge, he neither specifically objected to that portion of the charge as given by the trial judge, nor did he ask the court to clarify its charge on testimony by an accomplice. In the absence of a specific objection, appellant is deemed to have waived this point. *Commonwealth v. Watlington,* 452 Pa. 524, 306 A.2d 892 (1973).

Appellant next contends that a written prior consistent statement made by Artie Simpson and admitted into evidence should not have been given to the jury to take with it during its deliberations. Appellant admits on the record (NT II 66) and in his brief (appellant's brief at 16) that there was no objection to the actual admission of the written statement into evidence.

Appellant raised the question of Artie Simpson's credibility by suggesting, in effect, that Simpson might

have testified against appellant as part of a deal with the authorities.[6] The Commonwealth sought to rehabilitate the witness by presenting a statement Simpson made to the authorities prior to a time when he could have expected a plea bargain or more lenient treatment. In *Commonwealth v. Cooper*, 230 Pa. Superior Ct. 204, 327 A.2d 177 (1974), this court commented on the admissibility of prior consistent statements used to rehabilitate a witness whose credibility had been attacked by impeachment. We stated:

"In *Commonwealth v. Wilson*, 394 Pa. 588, 602-03, 148 A.2d 234, 242 (1959), the court said: 'As a general rule a statement made by a witness at one time, while admissible to contradict him, is not competent to corroborate or substantiate his present testimony. Were it not otherwise, the door might be opened to the fabrication of evidence. However, there are certain well-recognized exceptions to this general rule: prior declarations of a witness, which are consistent with his present testimony, may be admissible to corroborate his present testimony if it be alleged that the witness' present testimony is recently fabricated, or if it be claimed that the witness is testifying from corrupt motives.' The prior declaration must have been made before its 'ultimate effect on the question trying could have been foreseen,' *Risbon v. Cottom*, 387 Pa. 155, 163, 127 A.2d 101, 105 (1956), or before the asserted corrupt motive existed, McCormick, Handbook on the Law of Evid., §49, at 105 (2d ed. 1972)." *Id.* at 207, 327 A.2d at 179.

The prior consistent statement in the present case fits within the established guidelines, and could properly be used to rehabilitate the impeached testimony. As a correctly admitted exhibit, it was within the trial judge's

---

6. At the time of trial Simpson was under the control of the Juvenile Court and at a Commonwealth forestry camp.

discretion to determine if the jury could take the written statement with it. Pa.R. Crim. P. 1114. We will reverse the trial court's determination only when an abuse of discretion is shown. *Commonwealth v. Pitts,* 450 Pa. 359, 301 A.2d 646 (1973). However, we see no abuse of discretion which warrants a reversal on this point in the case at bar.

Appellant next contends that the adverse inference charge of the court was improper. The Commonwealth requested this charge because of appellant's failure to call additional alibi witnesses. Appellant based his defense on the alibi that he was with the McAlister family during the time period when the crimes occurred. However, only Hortense McAlister was called as an alibi witness, although appellant was allegedly in the company of her daughter, son, husband, uncle and other family members. Moreover, before Mrs. McAlister took the stand, the Commonwealth was unaware of whom appellant would call to establish his defense.

The rule in Pennsylvania delineating when a court may give the jury an adverse inference instruction was well stated by the court in *Commonwealth v. Jones,* 455 Pa. 488, 495, 317 A.2d 233, 237 (1974):

> " '[W]hen a potential witness is available to only one of the parties to a trial, and it appears this witness has special information material to the issue, and this person's testimony would not be merely cumulative, then if such party does not produce the testimony of this witness, the jury may draw an inference it would have been unfavorable. (citations omitted).' "

In the present case, the Commonwealth did not learn of the alibi witnesses before trial began. Therefore, they were not equally available to both sides, nor under the Commonwealth's control.

Appellant contends that additional alibi witnesses would have produced testimony that would be merely

cumulative. However, because Mrs. McAlister testified that there was time during the day of the crime that she was not personally with the appellant, his contention is without merit. There is a gap in Mrs. McAlister's testimony which appellant did not fill. Moreover, the witness evidenced a lack of knowledge of the appellant, such as his address and place of employment. Consequently, it was necessary for the appellant to place other alibi witnesses on the stand to fully establish his defense. When appellant failed to call those other persons allegedly in his company at the time of offenses, he was properly subject to the charge concerning adverse inference. *Commonwealth v. Moore,* 453 Pa. 302, 309 A.2d 569 (1973); *Commonwealth v. Wright,* 444 Pa. 536, 282 A.2d 323 (1971).

Appellant argues that he was denied a fair trial by the actions of the trial judge during the proceedings. These alleged actions, it is contended, included the extensive unfair examination of witnesses, the highlighting of only the direct testimony in his charge, and the display of a critical attitude towards appellant's counsel.

A trial judge has the inherent right and, at times, the duty to question witnesses to clarify existing facts and to elicit new information. When these are the objectives of the questioning and, when the questioning is not unduly protracted or conducted in a biased manner, the trial judge's discretion in interrogating witnesses will not be considered error. *Commonwealth v. Lanza,* 228 Pa. Superior Ct. 300, 323 A.2d 178 (1974).

In *Commonwealth v. Smith,* 227 Pa. Superior Ct. 355, 369-70, 324 A.2d 483, 491 (1974), this Court stated:

" 'A judge in a jury trial has a right to interrogate witnesses. It sometimes becomes his duty to do so, even to the point of recalling a witness to supply an omission of proof on a material point: (Citations omitted.) But a judge may so conduct an examination

as to make it an abuse of discretion, requiring a new trial.

" 'Witnesses should be interrogated by the judge only when he conceives the interest of justice so requires. It is better to permit counsel to bring out the evidence and clear up disputed points on cross-examination unaided by the court; but where an important fact is indefinite or a disputed point needs to be clarified, the court may see that it is done by taking part in the examination. The practice of a judge entering into the trial of a case as an advocate is emphatically disapproved. The judge occupies an exalted and dignified position; he is the one person to whom the jury, with rare exceptions, looks for guidance, and from whom the litigants expect absolute impartiality. . . .' " quoting *Commonwealth v. Myma*, 278 Pa. 505, 507-08, 123 A. 486, 487 (1924).

The trial judge asked questions of the prosecutrix, of the accomplice presented as a witness for the Commonwealth, and of the appellant's alibi witness. However, none of the questioning warrants reversal.

The line of inquiry to the prosecutrix concerned the lighting conditions in the apartment at the time of the crimes. Under *Commonwealth v. Kloiber*, 378 Pa. 412, 106 A.2d 820 (1954), this information was essential to the charge, and neither side had explored it in any detail. Answers to these questions could in no way prejudice the appellant since he had already been positively identified by the prosecutrix on direct examination. These inquiries went only to the validity of her previous identification of the appellant. In several instances the defense waited until after the answer was given to object. Questions concerning the lighting conditions of the room were neutral and non-prejudicial.

Appellant next objects to the court's questioning of the accomplice. The only questions put to this witness by the trial judge concerned the condition of the victim

when he left her apartment. The answers elicited provided the same information which the victim had also given. Consequently, the court in no way abused its discretion by asking these questions, and appellant was not prejudiced thereby.

In questioning the alibi witness, the court was concerned only with the extent of familiarity between the witness and appellant. The witness' credibility had already been attacked on cross-examination, and the judge's questions were not biased or prejudicial, but rather directed to an ill-defined and important area of examination.

The appellant bases his objections on the mistaken belief that areas overlooked by the attorneys involved in a trial are in some manner waived and not a proper subject of judicial inquiry. However, the court may justifiably attempt to clarify the witness' testimony to aid the jury in assessing its import. *Commonwealth v. Miller*, 442 Pa. 95, 275 A. 2d 328 (1971).

The record in the instant case establishes that the judge did not act as an advocate. *See Commonwealth v. Jackson*, 450 Pa. 92, 299 A. 2d 222 (1973); *Commonwealth v. Lanza, supra.* All of the questions posed by the court could have been properly asked either by the prosecution or the defense. The appellant argues that such questions as those regarding lighting, the victim's condition and the extent of the alibi witness' familiarity with the appellant had the inherent possibility of being outcome determinative. It is apparent that these questions could in no manner be considered indicative of bias, lack of partiality, or advocacy of any kind.

Appellant claims he was severely prejudiced when in open court, the judge allegedly lost patience with his attorney. He also suggests that the judge displayed a hostile attitude towards his counsel and admonished him for his conduct. The record establishes, however, that

222

appellant's counsel demonstrated that he was not pleased with the rulings of the court on numerous occasions. This was done by his looks of amazement to the jury, his movements of pencils and paper, and his general demeanor in addressing the court. In one instance, regarding a ruling of the court, he replied, "You have got to be kidding me." (NT 59)

The trial judge stated his position with regard to appellant's counsel in his opinion:

"Any alleged prejudice which the defendant may have suffered from these demonstrations by his counsel was underplayed by the Court who at all times was polite to counsel, ignoring his baser tactics. It ill becomes the defense now to argue that the actions of the Court demonstrated a bias against the defendant which contributed to the verdict when the defense deliberately placed himself between the Court and the Jury in a confrontation strategically designed to benefit his client. This apparently failed, the patience of the Court was not tried, and the defense having chose [*sic*] a deliberate strategic tactic cannot now complain that it would have been better to pursue another area or method of defense. *Commonwealth v. Hudson,* 455 Pa. 117 (1974) ; *Commonwealth v. McGrogen,* 449 Pa. 584 (1972)."

We believe, after a thorough examination of the record, that the trial judge performed his duties extremely well despite the trying conditions imposed by appellant's counsel.

Appellant's next contention concerns an objection to a statement made by the assistant district attorney during his cross-examination of the alibi witness. The court denied a motion for a mistrial based upon that statement. The objectionable statement follows, in context (underlined below):

"BY MR. STEEL:

Q. My question is, Mrs. McAlister, when did you find out? On direct examination you testified that after you talked to the investigator you made some effort to find out about a certain date. I am asking, my question is, Mrs. McAlister, when did you make those efforts to find out that it was your uncle that came up on the 14th?

A. I knew he came up on the 14th.

Q. When the investigator first talked to you, Mrs. McAlister, did he tell you that the defendant was charged with a crime that occurred on the 14th of March?

A. He told me he was involved in a crime or something.

Q. Did he tell you what the date was?

A. I don't remember.

Q. When the investigator talked to you, Mrs. McAlister, were other members of your family present?

A. Yes, my daughter.

Q. Anybody else?

A. No.

Q. So that the investigator talked to your daughter and yourself, is that correct?

A. Yes.

Q. You don't recall if he mentioned the date of March 14th?

A. No, I don't.

Q. When did you first recall finding out that this offense occurred on March 14?

A. He came back out.

Q. The investigator?

A. Yes.

Q. So the investigator came a second time?

A. Yes.

Q. Approximately when was that?

A. I don't remember the date.

Q. At that time were any other members of your family present when you talked to the investigator?

A. No.

Q. At that time did he tell you that the date was March 14th?

A. Yes.

Q. He did not mention that the first time?

A. I don't remember if he did or not. I was a little, you know—

Q. This happened the second time you talked to the investigator, but it did not happen the first time you talked to the investigator, is that correct?

A. Not that I recall.

Q. Whenever you found out the offense was March 14th, did you contact the police or District Attorney's office to tell them that you had knowledge of this defendant's whereabouts on that date?

A. No, I did not.

MR. SCANDONE: Objection. That is not relevant and it is not her duty.

MR. STEEL: *I would think that if a person has information relating to a person to show he is not guilty then he or she would tell somebody about it.*

MR. SCANDONE: I object to that being said in front of a jury. Once more, your Honor, I ask for a mistrial.

THE COURT: Objection sustained as to the question. Statements of counsel are not evidence. If counsel makes a statement, ladies and gentlemen, you are not to consider that as evidence.

We will strike that portion of the District Attorney's remarks about what people do." (NT 171-73) (emphasis added).

Cases cited by appellant in his brief are not on point. Those cases deal with the situation wherein the district attorney specifically asserts his own opinion that a wit-

ness told a lie. *Commonwealth v. Russell*, 456 Pa. 559, 322 A. 2d 127 (1974) ; *Commonwealth v Potter*, 445 Pa. 284, 285 A. 2d 492 (1971). In this case the prosecutor's statement asks for an inference that the alibi witness is not telling the truth. However, the function of the prosecutor when interrogating an alibi witness, is to show that the witness may be mistaken. In *Commonwealth v. Revty*, 448 Pa. 512, 517, 295 A. 2d 300, 302 (1972), the court stated: "While a prosecutor, in order to present the Commonwealth's case in the most favorable light, may make *fair* deductions and suggest to the jury *appropriate* inferences *from the evidence*, a society cannot permit its agent to attempt to prejudice the minds of the jury against the accused by making wholly unsupported inferences that the accused deliberately deceived the jury. (citations omitted)." In the instant case, the district attorney limited his statement to the facts in evidence, and suggested a legitimate inference which could be drawn therefrom. *Commonwealth v. Goosby*, 450 Pa. 609, 301 A. 2d 673 (1973).

In addition, the court instructed the jury to disregard the statement of the district attorney and to keep in mind that statements of counsel are not evidence in the case. The statement was stricken by the court and did not have the prejudicial effect necessary to warrant a mistrial. The appellant did not request, in the judge's charge, any further instruction concerning this statement, therefore, it is waived. *Commonwealth v. Clair*, 458 Pa. 418, 326 A. 2d 272 (1974).

Another contention by appellant was that his trial counsel suffered a conflict of interest. Counsel informed the court, at a recess in trial, of a concern which he had in continuing to represent the appellant. He stated that if Artie Simpson, a juvenile who was previously tried and convicted on charges arising from the same incident, was to be a witness for the prosecution, a two-fold

problem would develop: (1) the juvenile had also been represented by the Defender Association and (2) counsel would have to be a witness for the defense due to an alleged prior inconsistent statement made by Simpson to appellant's counsel. Appellant's counsel now contends that the court should have permitted him to take the stand to discredit Simpson's testimony. If counsel had seriously wanted to testify, however, he should have taken that position before trial when he found that the juvenile would be called by the prosecution. Furthermore, he should have arranged other representation for appellant. In addition, when counsel had that witness on the stand during cross-examination, he could have asked him about the inconsistent statement. Having failed to do so, he cannot complain of prejudice.

Appellant's trial counsel described the Voluntary Defender's Association in Philadelphia. He stated that it is divided into three distinct units: the State Unit, the Juvenile Unit, and the Federal Unit. He also said that they possess little or no knowledge of the operations of each other. Simpson's counsel was a member of the Juvenile Unit while appellant's counsel was employed in the State Unit.

Therefore, this case is similar to *Commonwealth v. Armbruster*, 225 Pa. Superior Ct. 415, 311 A. 2d 672 (1973), wherein this court held that there was no conflict in the trial representation of co-defendants by two members of a partnership. Therefore, his contention is without merit.

The remainder of the supplemental reasons for new trial are without merit and are not discussed further.

For the foregoing reasons, we affirm the lower court.

HOFFMAN, J., concurs in the result.