350 A.2d 412
**COMMONWEALTH of Pennsylvania**
**v.**
**Woodie ADAMS, Appellant.**

Supreme Court of Pennsylvania.

Argued May 2, 1974.

Decided Jan. 29, 1976.

James E. Del Bello, Asst. Public Defender, Media, for appellant.

Stephen J. McEwen, Jr., Dist. Atty., Ralph B. D'Iorio, John M. Kenney, John G. Siegle, Asst. Dist. Attys., Media, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

MANDERINO, Justice.

Appellant, Woodie Adams, was tried by a jury and found guilty of murder in the first degree on June 19,

1952. He was sentenced to a term of life imprisonment. No direct appeal was taken. In 1968, appellant filed a petition under the provisions of the Post Conviction Hearing Act. Relief was denied and an appeal was taken to this Court. On November 12, 1970, we remanded the case to the trial court for the filing of post-verdict motions. In accordance with our remand, post-verdict motions were filed. Following an evidentiary hearing, these motions were denied. This appeal followed.

Appellant contends, as he did in post-verdict motions, that he was denied the effective assistance of trial counsel in that two witnesses, known to counsel, were not called to corroborate appellant's trial testimony that he was beaten by the police prior to making oral admissions. We agree and thus reverse the judgment of sentence and award a new trial.

On the morning of March 2, 1952, appellant and several other individuals were taken into custody in Wilmington, Delaware, in connection with the stabbing death of Abraham Hughes in Chester, Pennsylvania, earlier that day. Shortly thereafter four Chester detectives arrived in Wilmington to question the suspects and to transport them back to Pennsylvania. The four suspects were taken to a large gymnasium-like room in the Wilmington police station where they were questioned by the Chester detectives in the presence of two Wilmington police officers. During this questioning, appellant made oral inculpatory statements. The suspects were then transported to Chester, Pennsylvania, where appellant signed a statement admitting that he was the sole perpetrator of the crime. This statement was introduced into evidence by the prosecution at trial. On cross-examination, however, appellant contended that he made the confession in Chester in order "to keep from being beaten any more." He testified that when he was first questioned in Wilmington he was kicked and beaten by two of the four Chester detectives. Appellant did not allege that he was mis-

treated during the subsequent interrogation in Chester but rather that he confessed because he was "scared" that the beatings would resume if he did not cooperate with his interrogators. Appellant further testified that as a result of the beating he received in Wilmington, he had been under a doctor's care since his arrest. In rebuttal, the prosecution called two of the four Chester detectives who had been sent to Wilmington as well as the two Wilmington police officers who had been present during the interrogation in Wilmington. All four testified that the appellant had not been mistreated in any way. The prosecution next called the official court reporter for the City of Chester who had stenographically recorded and prepared appellant's formal statement in Chester. The court reporter testified that appellant did not indicate in any way that he was being forced to make the statement nor did he request medical attention or bear any physical signs of mistreatment. The prosecution also called Mary Hughes, the victim's mother, who testified that shortly after appellant's arrival in Chester, she confronted and identified appellant in the Chester police station as the man who threatened her with a knife immediately after her son was stabbed. She further stated that during this confrontation appellant admitted to her that he was in fact the man she had seen. The inference which the prosecution attempted to draw from this testimony was that the appellant's confession was motivated by the confrontation with the victim's mother and not by the fear of physical abuse. Finally, the prosecution called the committing magistrate who took appellant's affidavit and witnessed his signature on the formal statement. The magistrate testified that he specifically questioned appellant as to the voluntariness of his statement and as to whether he had been mistreated in any way. Although defense counsel cross-examined each of the prosecution's rebuttal witnesses, he offered no evidence or testimony on the voluntariness issue.

At the evidentiary hearing, held following our remand of November 12, 1970, appellant presented the testimony of Salina Canon who had been a witness for the prosecution at trial. She testified that she had been taken into custody with the appellant, and that she had been present when appellant was interrogated both in Wilmington and later in Chester. As to the interrogation in Wilmington, her testimony was, in part, as follows:

"Q What did you see when you were in the gymnasium with Woodie?

A Well, I saw these two detectives, and I can still remember his name, it was Ryan, and Allen, and I saw them when they would ask Woodie a question one would hit him in the face, I mean just hard, smack him in the face, and the other would boot him with the knee.

Q What were they asking him questions about?

A Asking him if he cut this fellow in Chester, Edward Hughes.

Q Now, do you recall how long that took place, what you just described?

A Well, they roughed him up more. I mean, it was more than one or two times.

Q Did you see where Woodie was?

A Did I see where he was?

Q Yes.

A What?

Q Where was he with relation to these two detectives?

A After they brought him in, I was on one side, like over on one side, and they took Woodie right over to this other—I am not sure, but it was a table or bench or something there. But he was not sitting down when Ryan and them were asking him did he cut this boy Hughes fellow.

And when they would ask him this question one was—I mean, they haul off and, naturally, I mean, hit him with their hand. One was in sort of back of him. When he would hit him in the face, the other would take the knee part and, I mean, they would just let him have it."

The witness stated that she barely knew appellant at the time of the crime and that she had not seen or heard from him in the past twenty years. When asked why she did not come forward with this evidence at trial, she stated that she didn't think anyone would believe her. Appellant also introduced a letter which had been written by the Delaware County prison physician to the appellant's trial counsel prior to trial. The letter stated that the appellant was seen by the physician upon his admission to prison in March of 1952; that the appellant complained of pain as a result of having been beaten and kicked; and that examination revealed a small contusion on appellant's left hip.

■■■ In determining the effectiveness of appellant's counsel, "[o]ur task . . . encompasses both an independent review of the record, . . . and an examination of counsel's stewardship of the now challenged proceedings in light of the available alternatives." *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 604, 235 A.2d 349, 352 (1967). Ineffective assistance of counsel may only be found if " '[t]he defense actually tendered was so insubstantial in relation to those not offered as to cast doubt upon the hypothesis that trial counsel made a deliberate informed choice.' We cannot emphasize strongly enough, however, that our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests." (Emphasis in original.) Id. at 604, 235 A.2d at 352.

During his trial, appellant specifically testified that he had been beaten by Chester detectives in Wilmington in the presence of Salina Canon and the other two individuals who had been taken into custody. He further testified that as a result of that beating he had been under a doctor's care since the date of his arrest. Neither Salina Canon, nor the physician, nor the two detainees were called by defense counsel. Other than a cursory cross-examination of the prosecution's rebuttal witnesses, defense counsel made no attempt on the record to corroborate appellant's testimony. Thus, except for appellant's uncorroborated testimony, the prosecution's version of the voluntariness issue went to the jury unchallenged.

During the evidentiary hearing, appellant's counsel testified that prior to trial his client had told him of his mistreatment in Wilmington. Counsel was unable to recall what investigation, if any, was made to corroborate his client's story, or whether he ever contacted Salina Canon or the other two individuals who had been detained in Wilmington. Counsel did recall, however, receiving a letter from a prison physician indicating that upon his admission to prison appellant had been treated for contusions which appellant had claimed was the result of a police beating. Counsel also testified that prior to trial he did make a motion for a continuance so that he might interview certain out-of-state witnesses. Although the motion was denied, counsel stated that all of the witnesses that he wished to contact were ultimately called to testify at trial.

Salina Canon's testimony at the evidentiary hearing totally corroborated appellant's assertion at trial that he had been beaten and kicked by the Chester detectives in Wilmington. She further stated that at no time did appellant's counsel contact her or seek to question her concerning the events which occurred in the Wilmington police station. The record reveals that Salina Canon and one Arthur Jones, who had also been taken into custody

with appellant and who was present during the Wilmington interrogation, were called by the prosecution at trial to testify as to the circumstances of the crime itself. Neither was recalled by the prosecution or the defense to either rebut or corroborate appellant's trial testimony concerning the police beating.

In *Commonwealth v. Owens*, 454 Pa. 268, 312 A.2d 378 (1973), we addressed the issue of whether trial counsel's failure to call an alibi witness was ineffective assistance of counsel. We there decided that it was not because (1) there was no evidence that the defendant's trial counsel knew of the witness and (2) the alibi would not have helped the defendant's case. But, Mr. Justice Roberts, writing for a unanimous Court said:

> "had appellant clearly established that he had communicated to his attorney the existence of the two witnesses and his attorney, without investigation, had failed to call them as witnesses, then such conduct, if not explained, would be a relevant circumstance in determining whether appellant was denied effective assistance of counsel."

*Id.* at 272, 312 A.2d at 381.

Furthermore, in *Owens*, one of the alibi witnesses had retained defendant's attorney for him, had discussed the case with defense counsel, and testified at the PCHA hearing that she could not recall relating anything to defendant's attorney which would exculpate him.

■■ Appellant's case differs significantly from *Owens*. Here trial counsel knew of the alleged beating. He also had in his possession the letter from the prison doctor stating that appellant had complained of chest and side pains when incarcerated and that after examination a contusion was found on his hip. Appellant trial counsel also knew that Salina Canon and Arthur Jones were present during the interrogation in Wilmington at the time appellant was allegedly beaten. Unlike *Owens*, had

this corroborative evidence been introduced, the jury may well have disregarded appellant's confession.

Appellant's trial counsel testified, in response to the question of whether he had discussed any aspect of the case with Salina Canon, that: "To be perfectly frank about it I honestly cannot recall. However, it is my recollection that Mr. Smith and I did have contact with her." Salina Canon testified that she was never approached by appellant's trial counsel.

The testimony of Salina Canon and the letter from the prison doctor would have corroborated appellant's testimony about his beating and fear. We cannot determine what effect this testimony would have had in appellant's 1952 trial, *see Commonwealth v. Smith*, 442 Pa. 265, 268 n. 1, 275 A.2d 98, 100 n. 1 (1971), but it is evidence that the jury should have had an opportunity to consider.

In the *Smith* case we found the defendant had been denied the effective assistance of counsel because his trial counsel had not asked for a continuance to bring in an out of state alibi witness. In the present case, appellant's trial counsel did ask for a continuance early in the proceedings, in order to interview out of state witnesses (apparently Salina Canon and Arthur Jones). This request was denied. Both of these witnesses, however, did become available to him at trial, and at no time did he claim that he spoke to either of them about the alleged beating.

In the final analysis, the uncontradicted evidence introduced at appellant's hearing indicates that appellant's counsel did not pursue an important line of defense for his client, and no conceivable trial strategy would have warranted the failure to introduce available evidence corroborating appellant's testimony about the alleged police beatings. As we stated in *Commonwealth v. Twiggs*, 460 Pa. 105, 111, 331 A.2d 440, 443 (1975):

> In a case where virtually the only issue is the credibility of the Commonwealth's witness versus that of

the defendant, failure to explore all alternatives available to assure that the jury heard the testimony of a known witness who might be capable of casting a shadow upon the Commonwealth's witness's truthfulness is ineffective assistance of counsel.

There is no need to consider other issues raised by the appellant.

Judgment reversed and a new trial granted.

JONES, C. J., dissents.