Opinion by
 

 Watkins, J.,
 

 These are appeals by the defendant-appellant, William A. Didio, from the judgments of sentence of the Court of Quarter Sessions of Lancaster County, after
 
 *53
 
 conviction of the crimes of larceny, arson and conspiracy; and from the denial of motions in arrest of judgment and for a new trial.
 

 The record shows that the appellant is a resident of Bucks County, Pennsylvania, and operates a farm there owned by his family; that he employed one, William C. Bounds, to manage the Didio farm; that on a number of occasions the appellant and Bounds visited a Lancaster County farm owned by Melvin Kolb, to buy cattle; that the adjoining property was owned by Candace L. Newswanger and a property dispute existed between the neighbors in that Kolb complained that an almost worthless barn infringed upon his land; and that the appellant and Bounds offered to get rid of the building for Kolb.
 

 On July 22, 1965, the appellant and Bounds went to the Kolb farm at night; and that the fire was set that night by the appellant and Bounds. The record further shows that on March 16, 1965, the appellant and Bounds went to the New Holland Supply Company and took certain articles; and that on October 29, 1965, they again visited Lancaster and took 20 rolls of barbed wire from the Agway Company.
 

 Bounds confessed to the charges and was sentenced. He testified for the Commonwealth against the appellant and was uncorroborated, as the court stated in the charge, “because if you don’t believe William Bounds you would have to find the defendant not guilty because there isn’t enough credible evidence besides that of William Bounds to find him guilty of anything.”
 

 The defendant consistently denied that he had committed arson or that he had taken part in stealing articles as charged. He testified that Bounds had threatened to frame him so that Bounds and the appellant’s brother could take over the valuable farm land occu
 
 *54
 
 pied by appellant. The appellant was tried and convicted of larceny, arson and conspiracy.
 

 The appellant raises a number of questions based on the charge of the court below but we agree that the record in this ease shows clearly that the court below asked: “Do counsel have any requests for further charge or for corrections in the charge?” There was only one request made which the court granted and not even a general exception was taken to the charge. Unless the court committed basic and fundamental error in its charge, even a general exception, which wasn’t taken in this case, will not raise questions which could have been corrected if called to the court’s atten-
 

 tion.
 
 Segriff v. Johnston,
 
 402 Pa. 109, 166 A. 2d 496 (1960). “A party may not sit by silent, take his chances on a verdict, and, if it is adverse, then complain of matter which, if error, could have been eradicated during the trial if brought to the court’s attention properly and timely.”
 
 Zeman v. Canonsburg Boro.,
 
 423 Pa. 450, 223 A. 2d 728 (1966). However, it is still the court’s function to give instructions free from basic and fundamental error.
 
 Penneys v. Segal,
 
 410 Pa. 308, 189 A. 2d 185 (1963).
 

 We do not believe that many of the questions raised by the appellant rise to the category of basic and fundamental errors and the complaints could have been easily cured by timely requests to the court. We are concerned with the question as to the court’s instructions concerning the testimony of the alleged accomplice Bounds, a convicted felon, and a witness with a past felony record.
 

 At the outset it is extraordinary. that a man with such a prior good record and excellent character, as testified to by such outstanding witnesses as President Judge Donnelly of the County Court of Philadelphia and others of equal distinction in their respective fields
 
 *55
 
 could get involved with such a debased character as Bounds. The fact that the appellate courts extend themselves so much to protect the rights of chronic and hardened criminals makes it imperative that we should be even more diligent in our concern for the rights of those who come into court with spotless records as good, law-abiding citizens. The testimony of Bounds was for all relevant purposes in this case uncorroborated and his testimony was, in most instances contradicted. There is no rule of law in Pennsylvania forbidding a conviction on the uncorroborated testimony of an accomplice but it looks with disfavor on it because the source is corrupt and the court should carefully admonish jurors to give it the most detailed scrutiny as to credibility.
 
 Com. v. Elliott,
 
 292 Pa. 16, 140 A. 537 (1928). But in this case it is not only corrupt on the basis of the witness being an accomplice but was further corrupted by the fact that the testifying accomplice had been a prior convicted felon. An examination of the charge indicates that although the court mentioned the prior felony convictions he gave no instructions as to their effect on Bounds’ credibility.
 

 The court charged as follows as regards the testimony of Bounds:
 

 “Now we come to the testimony of William Bounds. William Bounds is an admitted accomplice of this Defendant. He is also a confessed felonist. He has confessed and been sentenced on charges of arson and larceny and these are felonies. You cannot accept his testimony until you have examined it carefully. The law says that when testimony comes from what is known as a corrupt source, a jury should not accept it except with caution. They should look at it carefully and weigh what was said and determine whether or not they are going to believe them. The law doesn’t
 
 *56
 
 say that you may not believe a man in the position of William Bounds. It only says before you believe him, consider carefully what he said in the light of all the other testimony in the case.
 

 “Now, remember too, that you have William Bounds’ statement or statements that he gave at sometime prior to this trial; one of them as early as January or February, sometime early this year, 1966. Remember too, that the witnesses who testified here did so outside of the hearing of William Bounds. He didn’t know what they said when he testified, because he wasn’t here.
 

 “Now, he may have heard them testify at the preliminary hearing in this case, but at this trial, he didn’t hear what these other witnesses said. So, you consider that too in determining whether or not you are going to believe this man, because if you don’t believe William Bounds, you would have to find the Defendant not guilty, because there isn’t enough credible evidence besides that of William Bounds to find him guilty of doing anything.
 

 “This, in summary, is the testimony of the Commonwealth. As I have told you, the testimony of William Bounds is extremely important here, and whether or not you determine this Defendant to be guilty or not depends upon whether or not you believe the testimony of William Bounds, and as I told you, look at it carefully before you believe it.”
 

 The testimony as to character witnesses was as follows :
 

 “The defendant offered six witnesses who testified concerning his prior good character. The law considers that a man of good standing is less likely to commit crime, and the evidence of good reputation may of itself work an acquittal by creating a reasonable doubt in your minds as to his guilt. Evidence of good char
 
 *57
 
 acter is substantive evidence and should be weighed and considered in conjunction with all the other testimony in the case. Such evidence may itself, in spite of all other evidence in the case, raise a reasonable doubt in your minds and if it does, you must find the defendant not guilty.”
 

 The court further charged:
 

 “This, in summary, is the testimony of the Commonwealth. As I have told you, the testimony of William Bounds is extremely important here, and whether or not you determine this Defendant to be guilty or not depends upon whether or not you believe the testimony of William Bounds, and as I told you, look at it carefully before you believe it.
 

 “If you believe this (Bounds’) testimony, it is sufficient in law for you to find the Defendant guilty of conspiracy.”
 

 In
 
 Com. v. Elliott,
 
 supra, at page 23, the court said: “While the law permits a conviction on the testimony of an accomplice, yet it looks with disfavor on this character of proof, and, because the source of such evidence is corrupt, it is usual and correct practice to admonish jurors not to rely upon it unless corroborated : Kilrow v. Com., 89 Pa. 480, 488; Ettinger v. Com., supra, 344-345. The extent of the admonishment is a matter within the discretion of the trial judge, but the fact that such a warning is usual has given rise to the expression that it is a ‘time-honored rule’ that the court shall caution jurors against convicting upon the testimony of an uncorroborated accomplice (Com. v. Williams, 275 Pa. 58, 65), particularly when such testimony goes to the identification of the person accused.”
 

 This Court, on appeal, must consider the charge of the court below as a whole and consider its overall effect on the jury, and not just isolated statements.
 

 
 *58
 
 The very unusual circumstances in this case called out for a strong charge on the danger of the uncorroborated testimony of an accomplice; a strong charge on the credibility of the witness accomplice with a prior felony record; and a strong charge on character testimony.
 

 The court, although stating that there were prior felony convictions in New Jersey did not specifically charge as to their effect on his credibility. The court, in the review of the testimony, failed to point out the blackmail and threats testified to by the defendant.
 

 A reading of the charge as a whole gives the clear impression that the testimony of Bounds was crucial, and, if believed, the defendant must be found guilty, sb that the remaining evidence would have no weight, not even the character testimony, which in itself is sufficient to raise a reasonable doubt. There is justification in the complaint of the defendant that there was an implied shift in the burden of proof.
 

 The charge of the court in the present case paid lip service to required admonishments to the jury as to the uncorroborated testimony of an accomplice and also as to the value of character testimony but this was submerged to a point where it was wasted verbiage. Under all the circumstances a new trial must be granted in the interest of justice.
 

 Judgments reversed and new trials granted.
 

 Montgomery, J., concurs in the result.