431 A.2d 926

COMMONWEALTH of Pennsylvania,

v.

**Michael D. SCARPINO, Appellant.**

Supreme Court of Pennsylvania.

Submitted March 5, 1981.

Decided July 2, 1981.

422

424

John L. Doherty, Manifesto, Doherty, Love & Talarico, P. C., Pittsburgh, for appellant.

Robert E. Colville, Dist. Atty., Robert L. Eberhardt, Deputy Dist. Atty., Dara De Courcy, Pittsburgh, for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY, KAUFFMAN and WILKINSON, JJ.

 

## OPINION OF THE COURT

O'BRIEN, Chief Justice.

Appellant, Michael Scarpino, was convicted of murder of the third degree after a trial by jury on October 12, 1979. Following the denial of post-verdict motions, appellant was sentenced to a term of imprisonment of not less than five years nor more than ten years. This appeal ensues.

The facts which led to the prosecution in this case are briefly stated below. On January 6, 1979, David William Ludwig was standing at a bar in the Sheraton Inn in Monroeville, Pennsylvania. Appellant approached Ludwig from the rear, swung him around with his left hand and proceeded to stab him in the neck with a knife held in his right hand. Thereafter, appellant turned and walked away when the victim threw a drink at him. Immediately, appellant returned and lunged at the victim's chest with his right hand. Ludwig died later that night from a stab wound to the chest.

Five issues have been raised on this direct appeal. Initially, appellant contends that the Commonwealth's evidence was too contradictory to support the verdict. Specifically, he claims that the testimony of the Commonwealth's primary witness was so contrary to the physical facts as stated by the Commonwealth's pathologist that the verdict was the result of surmise and conjecture by the jury and must be overruled.

In support of his argument, appellant highlights the testimony of an eye-witness. First, the witness testified that appellant approached the victim, grabbed the victim's shirt with his left hand, and stabbed the victim's neck in a downward fashion with the knife in his right hand. In describing this action, the witness testified:

"When he [appellant] pulled him [the victim] forward, he brought the knife up and straight down into, like into the side of his neck area on the man's left side."

The Commonwealth's pathologist, Dr. Joshua Perper, also testified at trial about this neck wound:

"My opinion is that most likely the wound was inflicted from the right upward toward the left, most likely, but however *I cannot exclude the possibility that it went in an opposite direction.*" (Emphasis added)

As seen from Dr. Perper's testimony, the wound could have been inflicted in a fashion consistent with the testimony of the prosecution witness.

As we noted in *Commonwealth v. Duncan*, 473 Pa. 62, 373 A.2d 1051 (1977):

"[t]he mere existence of conflict in the prosecution's evidence is not fatal to its case because the Commonwealth is not bound by everything its witnesses say, and the jury can believe, all, part, or none of the testimony." *Id.*, 473 Pa. at 62, 373 A.2d 1053–1054.

This principle extends to testimony proffered by expert witnesses as well. *Commonwealth v. Embry*, 441 Pa. 183, 272 A.2d 178 (1971). Nonetheless, a jury will not be permitted to return a finding where the evidence offered to support a verdict is so unreliable and/or contradictory as to make the verdict based thereon pure conjecture. *Commonwealth v. Farquharson*, 467 Pa. 50, 354 A.2d 545 (1976). Appellant contends that the above two quotes were inescapably in conflict and made it "impossible for the fact-finder to determine guilt without relying on surmise or conjecture."

In support of his position, appellant mistakenly relies upon *Commonwealth v. Santana*, 460 Pa. 482, 333 A.2d 876 (1975). In that case, the testimony in conflict concerned uncontrovertible physical facts. Consequently, the police officer's testimony that he observed the defendant exiting a certain door had to be rejected when the door was proven to be locked.

Herein, the testimony which appellant so vehemently characterizes as conflicting does not involve so absolute and unswerving a factual issue as the locked door in *Santana*. Rather, we are faced with a wound to the neck which admittedly could have been inflicted from two directions. Because the pathologist's testimony concerning the wound

could be consonant with the eye-witness' account, we cannot find that a verdict based thereon would be pure conjecture. *See, Commonwealth v. Farquharson, supra.* To do so would be to impinge upon the jury's responsibility to reconcile conflicts in the testimony. *Commonwealth v. Kearney,* 459 Pa. 603, 331 A.2d 156 (1975). The instant conflict is easily subject to reconciliation, and falls well within the jury's province as the trier of fact.

Furthermore, any conflict concerning this issue cannot be attributed sufficient weight so as to invalidate a jury verdict. Herein, the evidence of the neck wound was not the sole basis for the conviction. In fact, this wound was considered to be a superficial one, and did not contribute to or cause the victim's death. The wound to the chest was the fatal wound and the verified cause of death. A contradiction, even if it were not so easily resolved, concerning an incidental wound could not transform an otherwise sound verdict into "pure conjecture."

Appellant next argues that the trial court erred in denying his requested point for charge regarding the law on inconsistent testimony. Appellant contends that his requested point for charge was properly submitted according to Pa.R.Crim.P. 1119, which states:

"(a) Any party may submit to the trial judge written requests for instructions to the jury. Such requests shall be submitted within a reasonable time before the closing arguments, and at the same time copies thereof shall be furnished to the other parties. The trial judge shall charge the jury after the arguments are completed and shall then rule on all written requests." Pa.R.Crim.P. 1119(a).

However, appellant failed to comply with Pa.R.Crim.P. 1119(b) which provides that:

"(b) No portions of the charge nor omissions therefrom may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate. All such objections shall be made beyond the hearing of the jury."

When the trial judge completed his charge to the jury, he queried defense counsel:

"THE COURT: Now.... do you have any objection to the charge as given thus far?

"DEFENSE COUNSEL: I have no objections to it, Your Honor."

Defense counsel's acceptance of the charge as fair and accurate instructions to the jury on its duty as the trier of fact precludes appellant from now claiming that the charge infringed upon his right to a fair trial. The objection must be viewed as untimely because raising it for the first time on appeal denies the trial court an opportunity to correct the alleged error. Thus, appellant's claim is waived. *Commonwealth v. Brown*, 490 Pa. 560, 417 A.2d 181 (1980); *Commonwealth v. Glass*, 486 Pa. 334, 405 A.2d 1236 (1979); *Commonwealth v. Gilman*, 485 Pa. 145, 401 A.2d 335 (1979).

■ Appellant also complains that the trial judge erred in failing to instruct the jury on the elements of involuntary manslaughter. Not only did defense counsel never request such instructions, but he then specifically denied that he had any objections to the charge when so questioned by the Court. Later, he again stated that he was satisfied with the further instructions given to the jury upon their request for additional information on the offenses with which appellant was charged. Here again, appellant attempts to assign error to the trial judge based upon the jury charge when appellant himself failed to comply with the mandate of Pa.R.Crim.P. 1119(a) and (b). Appellant's objection to the lack of instruction on involuntary manslaughter, not being timely made, is waived.

Appellant continues the attack on his conviction by contending that he was denied a fair trial when the District Attorney's Office allegedly released prejudicial information to the media. Prior to and immediately following trial, the assistant district attorney and the District Attorney made comments to reporters concerning various aspects of the trial. While appellant concedes that there is no identifiable prejudice, he nevertheless characterizes the offending comments as involving:

" . . . such a probability that prejudice will result that it is deemed inherently lacking in due process." *Estes v. Texas*, 381 U.S. 532, 535, 85 S.Ct. 1628, 1629, 14 L.Ed.2d 543 (1965).

*See, Commonwealth v. Frazier*, 471 Pa. 121, 369 A.2d 1224 (1977).

In *Estes v. Texas, supra*, the Supreme Court held that while most cases involving claims of due process deprivation require a showing of identifiable prejudice, in a case where the procedure is inherently suspect, a denial of due process will be implied. Therein, the community was bombarded with the sights and sounds of a two-day pre-trial hearing during which the use of television coverage of the defendant's trial was argued and granted. At the time of trial, four of the jurors selected had been exposed to some type of coverage of the earlier proceedings. Throughout trial, the courtroom was filled with television cameras, reporters, and photographers. The Supreme Court ruled that the defendant's right to a fair trial was jeopardized because of the probability of prejudice emanating from televised court proceedings.

Similarly, appellant relies upon *Commonwealth v. Pierce*, 451 Pa. 190, 303 A.2d 209 (1973), where our Court ruled that the procedures employed by the state involved such a probability of prejudice that they were found to be inherently lacking in due process. In that case, the defendant was charged in the shooting of a seminarian and an attorney. Pre-trial publicity was extensive, and much of it was emotionally-charged and inflammatory. Both the police and the District Attorney's Office exacerbated the situation by contributing to the release of prejudicial information concerning the crime. The media reported that the defendant verbally confessed, and published a photograph depicting a staged reenactment of the crime with the defendant pointing to where the victims fell. We held that the defendant was denied due process when his request for a change of venue was refused.

Appellant argues that the assistant district attorney's comments in the instant case fall within the *Estes* frame-

work of conduct containing a high degree of prejudice rendering the entire criminal procedure inherently suspect. In support of this position, appellant alleges that the comments made by the prosecutor evince a violation of the Code of Professional Responsibility.[1] Disciplinary Rule 7–107 states:

> "*Trial Publicity* (B) A lawyer or law firm associated with the prosecution or defense of a criminal matter shall not, from the time of the filing of a complaint, information, or indictment, the issuance of an arrest warrant or arrest until the commencement of the trial or disposition without trial, make or participate in making an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication and that relates to: the character and reputation of the accused."

Subsection (E) states:

> "After the completion of a trial or disposition without trial of a criminal matter and prior to the imposition of sentence, a lawyer or law firm associated with the prosecution or defense shall not make or participate in making an extrajudicial statement that a reasonable person would expect to be disseminated by public communication and that is reasonably likely to affect the imposition of sentence."

With respect to section (A), appellant cites the comments made by the assistant district attorney after the coroner's hearing. The prosecutor stated that he had successfully prevented the granting of bond because appellant had not listed his occupation on the bond application and because he had been involved in an assault in Las Vegas. The assistant district attorney was quoted as saying, "I told the judge he worked for those people in Las Vegas." This was the extent of the pre-trial comments made to the media.

The post-trial statements, made approximately two weeks after trial, were contained in a series of news articles which

1. Adopted by the Supreme Court of Pennsylvania on February 27, 1974, effective February 27, 1974.

dealt with the prosecution's leading witness and the effects of the trial on her life. In the article, the District Attorney noted that this case had underworld overtones which caused some witnesses to change their stories while on the stand. The prosecutor also stated that the case involved threats against the primary witness' life, which necessitated twenty-four hour police protection for her. The District Attorney further commented that a slipshod investigation at the local level hampered the prosecution of the case. The final remark to which appellant objects is a quote attributed to police intelligence that prior to the stabbing, the victim had been summoned to the bar by appellant to discuss a debt which the victim owed. The newspaper article revealed that the information about the debt could not be presented to the jury because of insufficient proof.

A violation of the Disciplinary Rules does not constitute a *per se* deprivation of due process as appellant attempts to argue. The conduct of the prosecution must be independently reviewed under the bright light of judicial scrutiny to determine if there existed a high probability that prejudice to appellant would, in fact, result from the comments. Only then would we categorize the District Attorney's statements as inherently prejudicial.

In the case at bar, the majority of the comments were made after trial. The isolated pre-trial remark and the post-trial comments did not consist of the type of emotionally-charged and inflammatory exposure observed in *Commonwealth v. Pierce, supra*, nor did it rise to the level of publicity which inundated the trial in *Estes*. The presumption of prejudice which appellant would have us find requires the presence of exceptional circumstances. *Commonwealth v. Sutton*, 485 Pa. 47, 400 A.2d 1305 (1979). In *Pierce*, the defendant was subjected to extensive pre-trial public scrutiny and criticism. *Estes* contained sustained and pervasive pre-trial and trial publicity via media coverage. We have before us in the present case isolated comments dealing with peripheral aspects of the trial. Significantly, most of them were published after the trial. In the past, we

have held that even extensive pre-trial publicity does not absolutely preclude a fair and impartial trial, *Commonwealth v. Powell*, 459 Pa. 253, 328 A.2d 507 (1974), and we refuse to equate the pre-trial publicity in this case with a presumption of prejudice.

As noted above, the majority of the comments herein, unlike *Estes* and *Pierce*, were post-trial. Appellant's only claim to prejudice would therefore be in reference to his sentencing. The post-trial comments contributed little, if any, to the sentencing judge's knowledge of the case, especially since he had been exposed to all relevant facts at the time of trial. Just as a juror can "lay aside his impression or opinion and render a verdict based on the evidence presented in Court," *Irvin v. Dowd*, 366 U.S. 717, 722–723, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961), so too can a judge disregard any potentially prejudicial information which may come to his attention prior to sentencing. We consequently find that appellant's right to a fair trial was in no way jeopardized by the prosecution and no prejudice will be inferred from the pre-trial and post-trial publicity.

Appellant's final argument in his quest for relief again concerns the prosecutor in this case. During closing argument, the assistant district attorney, in response to defense counsel's comment concerning a lack of motive, observed:

> "The law does not require us to prove why any one person would murder another person. As you know from experience, some people need no motive at all, some persons take a position as a sniper and kills [sic] people that. . . ."

Appellant alleges that the above comment constituted argument of facts dehors the record and deprived him of a fair trial.

In reviewing purportedly improper statements to determine if relief should be granted, we adhere to the standard found in *Commonwealth v. Goosby*, 450 Pa. 609, 381 A.2d 673 (1973):

> "[a] new trial is granted when the remark is prejudicial; that is, when it is of such a nature or substance or delivered in such a manner that it may reasonably be said

to have deprived the defendant of a fair and impartial trial." *Id.*, 450 Pa. at 611, 381 A.2d at 674.

Specifically, if the unavoidable effect is to cause the jurors to fix in their minds unswerving bias and hostility toward the defendant and thereby prevent them from rendering a true verdict, a new trial is required. *Commonwealth v. Martin*, 461 Pa. 289, 336 A.2d 290 (1975). We have reviewed the statement by the prosecutor and do not consider it to be of sufficient weight to evoke such a reaction from the jury. *See Commonwealth v. Martin, supra.*

Immediately after the remark, the trial judge cautioned the jury to disregard the prosecutor's statement. Again, in the charge, the court emphasized that the jury was limited in its duty as fact-finder to consider only the evidence presented and that the arguments of counsel were not part of the evidence. Any possible prejudice was addressed and eliminated by the trial judge's prompt attention to the matter.

We are convinced, after a thorough review of appellant's above-cited assertions of error, that his right to a fair and impartial trial was fully preserved and that the verdict resulting therefrom was a just one.

Judgment of sentence affirmed.