452 A.2d 512

**COMMONWEALTH of Pennsylvania**

v.

**David ALMEIDA, Appellant.**

Superior Court of Pennsylvania.

Argued June 25, 1981.

Filed Oct. 29, 1982.

Petition for Allowance of Appeal Denied Feb. 24, 1983.

Thomas A. Bergstrom, Philadelphia, for appellant.

Eric B. Henson, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before CERCONE, P.J., and SPAETH, HESTER, WICK-ERSHAM, BROSKY, JOHNSON, POPOVICH, DiSALLE and SHERTZ, JJ.[*]

POPOVICH, Judge:

This is an appeal[1] from judgments of sentence for robbery,[2] burglary,[3] aggravated assault,[4] and criminal conspiracy.[5] Appellant argues that his rights under Rule 1100 were violated, and that the trial judge erred in instructing the jury on accomplice testimony.[6]

On January 5, 1977, appellant and four others[7] forcibly entered the residence of A. Charles Peruto at 1622 North 72nd Street in Philadelphia. Mrs. Josephine Peruto and her son, A. Charles Peruto, Jr., were inside. When one of the intruders grabbed Mrs. Peruto, and put a gun to her stomach and demanded her money, she screamed. (8/24/78 N.T. 19–22) Her son rushed upstairs from the basement to his

[*] DiSALLE & SHERTZ, JJ., did not participate in the consideration or decision of this case.

1. This case was originally argued before a panel of this court. After a request for reargument by the Commonwealth, the case was ordered reargued before the court *en banc.*

2. 18 Pa.C.S. § 3701.

3. 18 Pa.C.S. § 3502.

4. 18 Pa.C.S. § 2702.

5. 18 Pa.C.S. § 903.

6. Appellant, in a *pro se* supplemental brief, raises as a third issue the effectiveness of trial counsel's stewardship in regard to the preservation of appellant's second argument for this appeal. Because we find that the issue of the trial judge's charge on accomplice testimony has been properly preserved for the purposes of this appeal, appellant's *pro se* argument is moot.

7. The four others were Florence Gorman, Marie Rodriguez, Frank Crutchley, and Ray Thompson. Thompson was tried separately, and his conviction was affirmed in *Commonwealth v. Raymond Thompson,* 274 Pa.Super. 44, 417 A.2d 1243 (1979). Gorman and Rodriquez entered negotiated guilty pleas, and were placed on probation. The record does not indicate the disposition of the charges against Crutchley.

mother's aid.  One of the intruders fired a shot at him, and then all five intruders fled.  (8/28/78 N.T. 52–56)

On February 2, 1977, a complaint was filed against appellant.  Appellant was arrested on March 10, 1978, and his trial began on August 17, 1978.  He was convicted by a jury and after post-verdict motions were denied, was sentenced to 17 to 40 years in prison.  This appeal followed.  We affirm the judgment of sentence.

Appellant's first contention, regarding his right under Pa.R.Cr.P. 1100 to be brought to trial no later than 180 days from the date on which the complaint was filed, was adequately addressed by the lower court in its opinion, and we need not comment on it any further.

■ Appellant's second contention of error concerns the adequacy of the trial judge's charge to the jury on accomplice testimony.  At trial, Marie Rodriguez and Florence Gorman, two of the persons who broke into the Peruto residence with appellant, testified against appellant.  Appellant's trial counsel submitted the following points for charge regarding their testimony:

1.   It is a rule of law that evidence or testimony from an accomplice, in this case Mary [sic] Rodriquez and Florence Gorman, is evidence and testimony from a corrupt and tainted source;  that is, the law recognizes the fact that because these witnesses, Mary Rodriguez and Florence Gorman, are themselves guilty of this crime, they, as accomplices in general, often testify under a strong motive of favor or pardon.  As such, the courts have withheld from them that faith which is accorded to the testimony of a disinterested and innocent witness.

2.   This rule of law recognizes that it bears against the credibility of an accomplice witness, Mary Rodriquez and Florence Gorman, that they have participated in this crime and are testifying for the prosecution.

3.   Because these witnesses, Mary Rodriquez and Florence Gorman, have agreed to testify in exchange for a sentence of 10 years' probation, they are testifying under a strong

motive of a self-serving and selfish nature, and their testimony should be carefully scrutinized as derived from a corrupt source and possibly affected by their own interest.

4. It is also a rule of law that an individual cannot be found guilty from the testimony of an accomplice, in this case Mary Rodriquez and Florence Gorman, unless that testimony is corroborated.

5. The testimony of one accomplice is not deemed to corroborate that of another. So that in this case, Mary Rodriquez' [sic] testimony cannot be used to corroborate Florence Gorman's testimony, and Florence Gorman's testimony cannot corroborate the testimony of Mary Rodriquez.

In response to these points for charge, the trial judge ruled as follows:

"THE COURT: No. 1, I will charge the jury that they are to scrutinize the evidence given by Marie Rodriquez and Florence Gorman with care because it comes from a corrupt source. So I will Give [sic] No. 1 in essence.

MR. SCHULGEN: Scrutinize carefully; right?

THE COURT: Right. So to the extent that I have not covered point No. 1 to the extent mentioned to me by point No. 1, you have an exception.

MR. SCHULGEN: Thank you.

THE COURT: No. 2 is refused.

MR. SCHULGEN: I take exception to that.

THE COURT: You have an exception automatically.

No. 3 I will not charge as given. I will charge that their testimony shall be scrutinized as being derived from a corrupt source, but I will not charge the 'because' part, because I don't know. I don't argue with the jury on becauses. So No. 3 I will charge in that fashion.

To the extent I don't charge as given, you have an exception.

No. 4, that's false, so I will not give it.

MR. SCHULGEN: I take exception.

THE COURT: Okay. I will charge to the contrary, as a matter of fact. You can take exception to that when I give it, because I will charge that he may be found guilty even though the testimony is not corroborated. The only requirement is that they be scrutinized.

MR. SCHULGEN: Okay.

THE COURT: When I give that, you can take your exception.

I will leave No. 5 open for the time being." (8/28/78 N.T. 131–33)

The judge then charged the jury as follows:

"It is important, too, that you properly evaluate the testimony of Florence Gorman and Marie Rodriquez, both of whom testified for the Commonwealth and admitted that they were part and parcel of this crime, and that they pleaded guilty to the crimes eminating [sic] from this incident. When you come to assess their testimony, in your evaluation it is important that you are mindful of this that they are accomplices. The law requires that you scrutinize their testimony with care. The reason for this is that the testimony of an accomplice is deemed to be eminating from a corrupt or criminal source. In evaluating their testimony, you will also consider whether their testimony is corroborated from other sources. If you find that the testimony that they gave is corroborated from other sources and you find that in the other evidence, then your concern about their testimony is not as great. If you find corroboration from the other evidence, then you will not apply the special rule that you are to give special scrutiny and special care to their testimony. The ordinary standards of credibility then apply." (N.T. 79–80, 8/29/78)

The judge then asked, in a sidebar conference, whether either counsel had any objections to the charge. This prompted the following exchange between the judge and defense counsel:

"MR. SCHULGEN: Okay. I also object to the corroboration parts.

THE COURT: The what?

MR. SCHULGEN: Corroboration parts.

THE COURT: Well, in what manner?

MR. SCHULGEN: Just noting my objection.

THE COURT: You can't just do that. You can put it down, but it won't do you any good. You have to tell me in what manner it was wrong. Anything else?

MR. SCHULGEN: No."

(End of Sidebar Conference)

(8/29/78 N.T. 109)

Appellant now argues that the trial judge committed reversible error in failing to charge the jury, as requested in trial counsel's submitted point for charge No. 5, that as the testimony of one accomplice may not be used to corroborate the testimony of another accomplice, Marie Rodriquez's testimony should not be used to corroborate Florence Gorman's testimony, and Florence Gorman's testimony should not be used to corroborate Marie Rodriquez's testimony.

This court, in *Commonwealth v. Wilds,* 240 Pa.Super. 278, 362 A.2d 273 (1976), outlined the prerequisites for preserving for appellate review a contention of error in the trial court's charge:

"Error is preserved for appellate review in two ways. First, if a written point for charge is submitted and rejected and raised in post-verdict motions that will be sufficient under the rule. [Rule 1119(b), Pa.R.Crim.P.] Second, if the court instructs the jury and counsel makes specific objections and renews that objection in written post-verdict motions, that will be sufficient to preserve error under the rule." *Id.,* 240 Pa.Superior Ct. at 283 n. 9, 362 A.2d at 276 n. 9.

In his post-trial motions, appellant raised the issue of the trial court's refusal to give requested point for charge No. 5. If the trial judge would have refused point No. 5 when he ruled on the other requested points, the issue of the erroneous charge would clearly have been preserved for our review. However, in a meeting in chambers, the day before

the jury was charged, it will be recalled that the trial judge did not specifically deny point No. 5, but instead told counsel, "I will leave No. 5 open for the time being." After the charge, when counsel was asked if he had any objections, counsel replied, "O.K. I also object to the corroboration parts," and when the judge asked, "Well, in what manner?", counsel replied, "Just noting my objection." Although the trial judge never expressly ruled on submitted point No. 5, his omission of this point from the charge, even after counsel objected to the corroboration parts of the charge, manifested a rejection of the point sufficient to preserve the issue for appeal. *See Commonwealth v. Sisak,* 436 Pa. 262, 269–270, 259 A.2d 428, 433 (1969), where the Supreme Court stated that,

> "The formal submission of requested points for charge serves the same function as a request for additional or different instructions at the close of the court's charge. Both procedures present the issue to the trial judge. Both enable the court to avoid error by charging on the issue presented."

■ Appellant cites *Commonwealth v. Bennett,* 220 Pa.Super. 378, 283 A.2d 724 (1971) and *Commonwealth v. Pressel,* 194 Pa.Super. 367, 168 A.2d 779 (1961), for the proposition that it is reversible error for a trial judge to deny a request to instruct the jury on the point of corroboration by an accomplice. It is not disputed that the requested point for charge No. 5 is a correct statement of the law. However, contrary to appellant's assertion, the *Bennett* and *Pressel* cases do not stand for the proposition that a trial judge cannot refuse a requested charge on the point of corroboration by an accomplice. In *Commonwealth v. Fodero,* 273 Pa.Super. 278, 417 A.2d 648 (1979), a case involving the testimony of a single accomplice, this Court stated: "It is settled that 'a trial judge is not required to accept a requested instruction verbatim, even if legally correct and timely filed. The court is free to select it's own form of expression, so long as the issue is adequately, accurately and clearly presented to the jury.'" *Id.,* 273 Pa.Superior Ct. at 282, 417

A.2d at 650. *Quoting Commonwealth v. Gardner,* 246 Pa.Super. 582, 590, 371 A.2d 986, 989 (1977); *see Commonwealth v. Cartagena,* 482 Pa. 6, 393 A.2d 350 (1978); *Commonwealth v. McComb,* 462 Pa. 504, 341 A.2d 496 (1975). In *Bennett,* the trial court had instructed the jury that it was to scrutinize carefully the testimony of an accomplice to determine whether he was corroborated by the testimony of *any* other witness, necessarily including one witness who was herself a possible accomplice. Our *Bennett* court found error in this charge because it permitted the jury to find corroboration of one accomplice by another.

Here, instead of giving Point No. 5, the trial judge told the jury:

> "In evaluating *their testimony* [i.e., the testimony of Marie Rodriquez and Florence Gorman], you will also consider whether *their testimony* is corroborated by other sources. If you find that *the testimony they gave* is corroborated from *other* sources, then your concern about *their testimony* is not as great." (N.T. 79–80, 8/29/78) (Emphasis added.)

Looking at this portion of the charge by itself, it appears the judge treated the testimony of one accomplice as though it corroborated the testimony of the other. But, when examined in the context of this case, where the two accomplices participated in the robbery from start to finish and told nearly identical stories to the court, treating the testimony of two accomplices as a unit was not error. The judge admonished the jury to view "their testimony" with great scrutiny, and to determine whether *it* was corroborated by "other evidence" in the record. The court's instruction did not permit the jury to do what the *Bennett* opinion forbids: allow the testimony of one accomplice to corroborate that of another.

In *Pressel, supra,* the trial judge charged the jury correctly on the subject of scrutinizing accomplice's testimony with care, but failed to state, although specifically requested to do so, that the testimony of two named accomplices was not to be used to corroborate each other's stories. This court

granted a new trial to *Pressel* because of the trial judge's complete refusal to charge on the subject of corroboration.

■ In an exhaustive search of other jurisdictions, we find that only the Supreme Court of Iowa has been confronted with a situation similar to the instant case. In *Iowa v. Horn,* 282 N.W.2d 717 (Iowa 1979), where two accomplices testified to the same facts, the trial judge instructed the jury that, "A defendant cannot be convicted upon the evidence of accomplices, unless *their* testimony is corroborated by *other* evidence ...." (Emphasis added). Defendant objected to the court's charge and excepted to the court's failure to change the instructions to read that, "The testimony of one accomplice cannot corroborate the testimony of another accomplice." Defendant also requested that the specific names of the accomplices be used in instructing the jury to the same effect. Although our law allows a defendant to be convicted on the uncorroborated testimony of an accomplice, the point here is the same. The Iowa Supreme Court found that the instruction given adequately incorporated the concept of defendant's request.

■ The reasoning of the Iowa Supreme Court is equally applicable to the law of Pennsylvania. The *Bennett* and *Pressel* cases stand for the proposition that it is reversible error for a trial judge to allow a jury to infer from his instructions, by negative inference or otherwise, that the testimony of one accomplice may be used to corroborate that of another accomplice. These cases are clearly distinguishable from the present case, where the trial judge instructed the jury that in order for them to treat the accomplice testimony as ordinary evidence, they must find that "the testimony *they* gave is corroborated from *other* sources." Consequently, neither trial counsel's requested point for charge No. 5 nor the trial court's charge would permit the jury to allow the testimony of one accomplice to corroborate that of the other. Therefore, this court affirms the judgment of sentence imposed by the lower court.

SPAETH, J., files a concurring and dissenting opinion in which CERCONE, P.J., and JOHNSON, J., join.

DiSALLE and SHERTZ, JJ., did not participate in the consideration or decision of this case.

SPAETH, Judge, concurring and dissenting:

The majority holds, first, that we should consider appellant's claim that the charge was erroneous. I think this claim has been waived. When the trial judge asked defense counsel what was wrong with the charge, counsel wouldn't tell him. I shouldn't let counsel tell us what he wouldn't tell the trial judge. Next the majority holds that the charge was not erroneous because it "did not permit the jury to [use] the testimony of one accomplice to corroborate that of another." Slip op. at 10. I think the charge in its most obvious meaning did permit this. It was at the very least ambiguous. But there was no need for any ambiguity. The trial judge had only to give either the unambiguous requested point for charge or the approved standard form of jury instruction.

An unusual feature of this case is that appellant has filed a *pro se* brief arguing that his counsel was ineffective in waiving the claim that the charge was erroneous. When this case was argued before a panel of this court of which I was a member, I concluded, with Judge BROSKY concurring, that we should consider appellant's *pro se* brief, and should grant a new trial because there could be no reasonable basis for counsel's failure to preserve the claim that the charge was erroneous. On reargument before the court *en banc,* the Commonwealth has persuaded me that as a matter of policy we should not consider *pro se* briefs.

On this view of the case, the judgment of sentence should be affirmed, for the claim that Rule 1100 was violated is without merit, and the claim that the charge was erroneous has been waived. But the order affirming the judgment should not, as the majority's order does, adjudicate the claim that the charge was erroneous. Instead, we should affirm without prejudice to appellant's right to file a petition for

post-conviction relief on the ground that his appellate counsel was ineffective for failing to make on appeal the claim that trial counsel was ineffective for failing to object properly to the charge.

–1–

In holding that appellant's claim that the charge was erroneous was not waived and that we should therefore consider it, the majority relies on *Commonwealth v. Wilds,* 240 Pa.Superior Ct. 278, 362 A.2d 273 (1976), at 514–515, and *Commonwealth v. Sisak,* 463 Pa. 262, 259 A.2d 428 (1969), *id.,* 240 Pa.Superior Ct. at 515. I quite agree that these cases hold that a claim that a charge was erroneous is preserved when counsel has submitted a correct requested point for charge *and* the point has been "rejected" (*Wilds*) or "refused" (*Sisak*). Here, the requested point was *not* rejected or refused. Instead, when the requested point was submitted, the trial judge told counsel, "I will leave No. 5 open for the time being," 8/28/79 N.T. 133, and he never thereafter ruled upon it.

The majority acknowledges that the trial judge never ruled upon the requested point, at 515 ("the trial judge never expressly ruled . . . ."), but, it says, the judge "manifested a rejection of the point sufficient to preserve the issue . . . ," *id.* I don't find any such manifestation. To the contrary, the record is clear—the majority cites nothing to the contrary—that what the trial judge was manifesting was not *rejection* of the point but *agreement* with it: he recognized that the point was a correct statement of the law and believed that he had in his own words said the same thing the point said.

However, having stated the law in his own words, the trial judge found that counsel disagreed with the charge. Specifically, counsel said he "object[ed] to the corroboration parts." 8/29/78 N.T. 109. The following colloquy ensued:

THE COURT: The what?

MR. SCHULGEN: Corroboration parts.

THE COURT: Well, in what manner?

MR. SCHULGEN: Just noting my objection.

THE COURT: You can't just do that. You can put it down, but it won't do you any good. You have to tell me in what manner it was wrong. Anything else?

MR. SCHULGEN: No.

*Id.*

I submit, the trial judge was right: You *can't* just do that, and if you do, it *won't* do you any good. (Or at least until our decision today it wouldn't have.) For you will be held to have waived the objection that you are "[j]ust noting" and won't explain. That is what we held in *Commonwealth v. Whyatt*, 235 Pa.Superior Ct. 211, 340 A.2d 871 (1975), which the majority doesn't cite, much less distinguish. There we said:

> In any event, although appellant did submit a correct point for charge, he neither specifically objected to that portion of the charge as given by the trial judge, nor did he ask the court to clarify its charge on testimony by an accomplice. In the absence of a specific objection, appellant is deemed to have waived this point. *Commonwealth v. Watlington*, 452 Pa. 524, 306 A.2d 892 (1973).

*Id.*, 235 Pa.Superior Ct. at 216, 340 A.2d at 874.

So here: Counsel submitted a correct point for charge; he did not specifically object to the charge as given; and he did not ask the court to clarify the charge. All counsel did was say that he "object[ed] to the corroboration parts." When the trial judge found this objection unintelligible, counsel wouldn't tell the judge what he meant.

To my mind, counsel's refusal represented, in the most basic sense, a waiver of counsel's right now to tell *us* what he meant. The principle that underlies the doctrine of waiver, and gave the doctrine birth, is that considerations of fairness to the trial judge and the efficient use of judicial resources all require that counsel *must* tell the judge what he meant. *Commonwealth v. Scarpino*, 494 Pa. 421, 431 A.2d 926 (1981); *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974). Can anyone doubt that here, if counsel had told the trial judge what he now tells us, the judge would have

replied, "Oh, *now* I see what you're objecting to. I didn't mean *that*," and then would have corrected his charge?

–2–

The law on the testimony of accomplice witnesses embodies four main principles. First, the testimony of an accomplice should be scrutinized with great care, as it comes from a corrupt source, that is, from one who has had a hand in the commission of the crime. *See Commonwealth v. Thomas,* 479 Pa. 34, 387 A.2d 820 (1978); *Commonwealth v. Sisak, supra; Commonwealth v. Rhodes,* 250 Pa.Superior Ct. 210, 378 A.2d 901 (1977); *Commonwealth v. Vorhauer,* 232 Pa.Superior Ct. 84, 331 A.2d 815 (1974); *Commonwealth v. Darnell,* 179 Pa.Superior Ct. 461, 116 A.2d 310 (1955). Second, if the testimony of an accomplice is corroborated, then the testimony may be considered more dependable, and received as ordinary evidence. *Commonwealth v. Banks,* 454 Pa. 401, 311 A.2d 576 (1973), *citing Commonwealth v. Turner,* 367 Pa. 403, 80 A.2d 708 (1951); *Commonwealth v. Elliot,* 292 Pa. 16, 23, 140 A. 537, 539 (1928). Third, a fact finder may convict a defendant even upon the uncorroborated testimony of an accomplice witness, if, after the testimony has been scrutinized with great care, it is found to be true. *Commonwealth v. Gordon,* 254 Pa.Superior Ct. 267, 385 A.2d 1013 (1978); *Commonwealth v. Bradley,* 449 Pa. 19, 295 A.2d 842 (1972); *Commonwealth v. Richbourg,* 263 Pa.Superior Ct. 494, 398 A.2d 685 (1979); *Commonwealth v. Didio,* 212 Pa.Superior Ct. 51, 239 A.2d 883 (1968). Fourth, and finally, the testimony of one accomplice may not be used to corroborate the testimony of another accomplice. *Commonwealth v. Bennett,* 220 Pa.Superior Ct. 378, 283 A.2d 724 (1971); *Commonwealth v. Jones,* 213 Pa.Superior Ct. 504, 247 A.2d 624 (1968).

Here, the charge adequately instructed the jury on the first three of these four principles; the issue is whether it also did so on the fourth principle, that is, this is the issue, given the majority's conclusion that it hasn't been waived.

In considering this issue, it should first be noted that the trial judge did not give appellant's requested point for charge No. 5. Had the judge given the point, there could be

no question regarding the adequacy of the charge. Point No. 5 was both a correct and clear statement of the law. Had the point been given, the jury would necessarily have known that it was obliged to consider the testimony of each accomplice separately, that is, that it was to scrutinize the testimony of Mary Rodriguez, and then consider whether that testimony was corroborated by the testimony of any other witness not counting Florence Gorman, and that it was to scrutinize the testimony of Florence Gorman, and then consider whether that testimony was corroborated by any other witness not counting Mary Rodriguez. But instead of giving Point No. 5, the trial judge told the jury:

> In evaluating *their testimony* [i.e., the testimony of Mary Rodriguez and Florence Gorman], you will also consider whether *their testimony* is corroborated by other sources. If you find that *the testimony they gave* is corroborated from *other sources* and you find that in the other evidence, then your concern about their testimony is not as great. If you find corroboration from the other evidence, then you will not apply the *special rule* that you are to give *special scrutiny and special care* to *their testimony.* The ordinary standards of credibility then apply.

(Emphasis added.)

The errors in this instruction may be seen if we put ourselves in the jury's place and try to follow the instruction.

The jury was told to start by considering whether the testimony of the two accomplices was corroborated by other sources. That consideration, the jury was then told, would lead it to adopt one of two lines of thought. First, the jury might decide that the accomplices' testimony was *not* corroborated by other sources. In that case, it was to apply the "special rule," and "give special scrutiny and special care to their testimony." Or second, the jury might decide that the accomplices' testimony *was* corroborated by other sources. In that case, it was to apply the "ordinary standards of

credibility." Under this instruction, the jury would almost certainly go wrong, whichever line of thought it adopted.

Suppose the jury decided that the accomplices' testimony was *not* corroborated and should therefore be given special scrutiny. That scrutiny would be directed to the accomplices' testimony *as a unit,* for in his instruction the trial judge treated the testimony as a unit (he referred to it that way four times). But that was wrong. What the jury was supposed to do was to *separate* the accomplices' testimony, and give special scrutiny first to the testimony of one accomplice, and next to the testimony of the other.

Or suppose the jury decided that the accomplices' testimony *was* corroborated and should therefore be evaluated by the "ordinary standards of credibility." But that was wrong too. The ordinary standards of credibility are matters of common sense—something a jury is supposed to use. One of the most ordinary of these ordinary standards is that when two eyewitnesses say the same thing, it is more likely to be true than when only one does. Here, that is exactly what the jury should have been told *not* to do. For when the two eyewitnesses are accomplices, the "ordinary standards of credibility" do *not* apply, *even if* the accomplices' testimony *is* corroborated by other sources. Again, the jury must *separate* the accomplices' testimony, taking the testimony of each accomplice by itself, and evaluating it without any reference to the testimony of the other accomplice. Here the trial judge precluded that approach, or at least made its adoption most unlikely, not only by his treatment of the accomplices' testimony as a unit, but by his statement that if corroborated, the testimony could be evaluated by the "ordinary standards of credibility."

Perhaps a figure of speech will illustrate the trial judge's error. The testimony of an accomplice is said to come from a polluted source. Waters that come from a polluted source may be made cleaner, but only by other waters that come from a pure source, not by waters from another polluted source. In a case where more than one accomplice testifies, the jury must understand this. By whatever choice of

words, the trial judge must make plain that the testimony of one accomplice cannot gain added stature, or persuasiveness—that its pollution cannot be lessened—because of what another accomplice said, and that this is always so, whether the testimony is or is not corroborated. No matter how generously read, the instruction here did not make that plain.

There was no excuse for this. The requested point for charge was correct and left no room for misunderstanding. It said in so many words that "Mary Rodriguez'[s] testimony cannot be used to corroborate Florence Gorman's, and Florence Gorman's cannot corroborate Mary Rodriguez." Of course, the judge was entitled to use his own words. *Commonwealth v. Musselman*, 483 Pa. 245, 396 A.2d 625 (1979); *Commonwealth v. Lesher*, 473 Pa. 141, 373 A.2d 1088 (1977). But as Judge BROSKY pointed out in his concurring opinion for the panel:

When a point of law is clearly established, a trial judge has both a duty to know the law and to present it to the jury in a concise and accurate manner. As stated in the *ABA, Project on Minimum Standards for Criminal Justice, Trial by Jury,* "Approved Draft, 1968," 4.6(a):

Commentary:

Section 4.6(a)

Instructions to jurors should be clear, concise, accurate and impartial statements of the law written in understandable language and delivered in conversational tone which will be helpful to jurors." Devitt, *Ten Practical Suggestions About Federal Jury Instructions,* 38 FRD 76 (1966).

Emphasis added. This recommendation is equally applicable to state courts as it is to federal courts.

In the instant case, the requested instruction No. 5 was a clear statement of the law [Citation]. Nevertheless, the trial judge chose not to give that instruction but, rather gave another.

Panel Concurring Slip op. at 1–2.

214

The trial judge's decision not to give the requested point was the more inexcusable in view of the fact that the Pennsylvania Standard Jury Instructions (Pennsylvania Supreme Court Committee) Crim.Law § 4.04 (May 15, 1972) exactly provide for the sort of case before the judge, that is, for a case in which more than one accomplice had testified. The instructions are:

First. The testimony of (      ) should be looked upon with disfavor as coming from corrupt and polluted sources.

Second. You should closely *and separately examine* the testimony of (      ) and (      ) and accept the testimony of each only with caution and care.

Third. You should consider separately whether the testimony of each is supported, in whole or in part, by other evidence aside from his own testimony, for if it is supported by independent evidence it is more dependable. However, *you may not consider the testimony of (      ) as supporting the testimony of (      ). The testimony of each must be considered separately.*

Fourth. You may find the defendant guilty ·based on the testimony of (      ) alone or on the testimony of (      ) alone and even though the testimony of the witness on whom you rely is not supported by any independent evidence.

(Emphasis added.)

–3–

In its brief to the court *en banc,* the Commonwealth argues that the panel erred in considering appellant's *pro se* brief. It is quite true that the ·panel did consider the *pro se* brief. In the panel's view—as remains my view here—the claim that the charge was erroneous had been waived by *counsel.* The panel nevertheless considered the claim because it was made by *appellant himself,* in his *pro se* brief, where appellant argued that counsel had been ineffective in

waiving the claim. Finding no reasonable basis for the waiver, the panel ordered a new trial.[1]

The majority doesn't respond to the Commonwealth's argument that the panel erred in considering appellant's *pro se* brief. Because it holds that counsel didn't waive the claim that the charge to the jury was erroneous, it finds appellant's *pro se* argument to be moot. At 512 n. 6. This ignores the fact that in his *pro se* brief appellant made five other allegations of ineffectiveness of trial counsel, which the majority does not address in any way. In any case, since I believe that trial counsel did waive the claim with regard to the charge to the jury, and because of the other claims raised in the *pro se* brief, I believe that it is necessary to decide whether the Commonwealth is right that we shouldn't consider appellant's *pro se* brief.

In the opinion I wrote as a member of the panel, I said that I saw no reason not to consider appellant's *pro se* brief, adding that if we were to refuse to consider it, "most likely" appellant would file a petition for post-conviction relief alleging counsel's ineffectiveness "for failing to make the argument he tried to make in his *pro se* brief. Thus it will avoid undue procedural confusion, and also avoid delay, to address the issue presented in appellant's *pro se* brief now." Especially did I think this so since the *pro se* brief "not only does not pose any danger to appellant, but benefits him by presenting another argument on his behalf." Panel Slip op. at 16 n. 7.

On reargument, the Commonwealth has persuaded me that I was wrong, and that "[t]his Court should announce that it will not consider *pro se* pleadings until these are reviewed by counsel." Brief for Commonwealth at 16. On reflection, I've concluded that the distinction between *pro se* arguments that "benefit[ ]" an appellant and those that "pose [a] danger" to him is unsound. Whatever the nature of the argument, by considering it we may, as the Common-

---

1. Judge VAN der VOORT dissented, but on the ground that the charge was not erroneous, and that if it was erroneous, the error was harmless.

wealth suggests, encourage other appellants to submit *pro se* briefs, which the Commonwealth "will have to decipher and respond to," thereby "creat[ing] a shadow docket of hundreds of appeals." *Id.* It is not unusual for a judge to receive a *pro se* letter or petition of some sort from a defendant. The general practice is for the judge, or the prothonotary, to refer the letter to counsel who represents the defendant. I think we should follow the same practice with respect to *pro se* briefs, leaving it to the defendant to file a petition for post-conviction relief if, after we have decided his appeal, he continues to believe that counsel should have made, and we should have responded to, the argument he made *pro se.* It may be that sometimes this will, as I suggested in my opinion as a member of the panel, unduly prolong litigation. But on balance, I think, it will result in a more orderly and therefore more efficient administration of justice; and in most cases, at least, the defendant will not be prejudiced, for counsel will be able to consider the defendant's *pro se* argument, and if it has any merit, present it to us or the lower court in one way or another.

–4–

Having reached the foregoing conclusions, I should decide the case as follows: I should hold, as does the majority, that appellant's claim that Rule 1100 was violated is without merit.[2] Next I should hold that appellant's claim that the charge was erroneous has been waived. These conclusions would lead me to affirm the judgment of sentence, which is why this opinion is in part a concurring opinion. Finally, I should hold that appellant's *pro se* brief should not be considered. That conclusion would lead me to affirm the judgment of sentence, but, and this is why this opinion is

**2.** The claim is that in failing to find appellant for 401 days, the police did not exercise due diligence. The claim is without merit because we cannot be sure that had the police undertaken the interviews and investigations suggested by appellant, they would have found and apprehended him any sooner, and also, because in any event the police are only required to make reasonable efforts, not every conceivable effort, to find a defendant, and here their efforts were reasonable.

also a dissenting opinion, without thereby adjudicating appellant's *pro se* claim that his counsel was ineffective for failing to preserve the claim that the charge was erroneous, and without prejudice to appellant's right to file a petition for post-conviction relief on that ground.

CERCONE, P.J., and JOHNSON, J., join in this concurring and dissenting opinion.